## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANDREA CAMPBELL**, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>v.<br><br>**SI WIRELESS, LLC,** and DOES 1-25<br><br>                         Defendant. | Civil Case No.: 16-1320<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

### INTRODUCTION

1.      Plaintiff Andrea Campbell ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from Defendant SI Wireless, LLC's ("SI" or "Defendant") practice of sending autodialed text messages to cellular telephones after the recipient has revoked consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA").

2.      The TCPA is a codification of a type of invasion of privacy. As Congress wrote in the Congressional findings in the TCPA, "[e]vidence compiled by the Congress indicates that … telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." 47 U.S.C. 227, Congressional Findings ¶ 10.

3.      Plaintiff has her cellular telephone service through Defendant SI.

4.      Defendant SI sends "account suspension" alert text messages, informing customers that their service is going to be, or has been, suspended due to, e.g., missed payments.

5.      On August 8, 2016, Plaintiff replied "STOP" to one of these text messages, as each

1

text message would arrive at approximately 7:00 AM, interrupting her sleep.

6.     Since that date, Defendant has sent at least four additional text messages.

7.     While the FCC has held that wireless carriers do not need any additional consent to contact their customers initially, the FCC has not similarly held that a customer may not *revoke* this consent.

8.     Indeed, under the TCPA, consumers are permitted to revoke prior express consent to receive text messages. *See, e.g. SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (Nov. 26, 2012) (confirming that an entity may only send an opt-out confirmation text after the consumer has revoked his or her consent to receive further text messages); *Gonnella v. Delbert Servs. Corp.*, Case No. 14-cv-4921, 2015 U.S. Dist. LEXIS 34465, *9-11 (N.D. Ill. Mar. 19, 2015).

9.     Accordingly, Defendant's post-"stop" text messages were sent without prior express consent, and thus violated the TCPA.

10.    Upon information and belief, Defendant has made and continues to send similar text messages to cellular telephones after the recipients have replied "STOP" to one of Defendant's messages.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it resides in this district.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case emanated from this District. Venue is also proper because

Defendant resides in this district.

## PARTIES

13.     Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Tennessee.

14.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

15.     Defendant SI Wireless, LLC. is and at all times mentioned herein was, a corporation duly organized under the laws of the State of Illinois with its headquarters in Steeleville, Illinois.

16.     Defendant SI Wireless, LLC is and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.     Does 1-25 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

## FACTUAL ALLEGATIONS

18.     Within the past four years, and primarily in 2016, Plaintiff has received text messages from Defendant's SMS "Short Code"[1] number 611 to her cellular telephone number 731-###-0510.

19.     These text messages generally related to the suspension of, or the potential suspension of, Plaintiff's account. For example:

> Your MobileNation service will be suspended within 48 hours. Go to mymobilenation.com/selfcare, dial 611 or visit a Mobile Nation

---

[1] A "short code" is essentially a shortened telephone number, primarily used for sending and receiving SMS and MMS messages. Short codes are often, if not exclusively, used with automated messaging.

Store to make a payment.

* * *

Your phone plan payment must be made in 12 days to avoid suspension. Go to mymobilenation.com/selfcare, dial 611 or see a MobileNation Store to make a payment.

20.   While this information is certainly useful, Defendant chose to send these text messages at 7:00 AM, which caused them to be more disruptive than helpful.

21.   Thus, while none of the text messages from 611 contained any instructions on how to stop the texts, Plaintiff, on August 8, 2016, used the tried and true – and FCC approved – method of stopping automated text messages and sent the single word "stop."

22.   Nevertheless, the texts continued, and Plaintiff received no less than four additional texts after sending her "stop" request.

23.   The following month, Plaintiff called Defendant to complain about the continued text messages and asked how to stop them, and was told by Defendant's representative that the text messages could not be stopped.

24.   These text messages were all sent using an "automatic telephone dialing system" as defined at 47 U.S.C. § 227(a)(1) and as explained in subsequent FCC regulations and orders.

25.   That the text messages were sent using an automatic telephone dialing system is evidenced by, *inter alia*:

   a)   The frequency, persistence, and regularity of the messages;

   b)   The near-identical form and substantially similar content of the messages;

   c)   The fact that the messages came from a "short code," which, upon information and belief, cannot be assigned to a standard telephone;

4

d) The traditional and near-exclusive use of "short codes" to send automated messages;

e) The lack of any response in response to Plaintiff's "STOP" requests;

f) The lack of any human response to Plaintiff's "STOP" requests;

26.     Text messages are considered "calls" under the TCPA. *See, e.g.* 2003 FCC Order, 18 FCC Rcd. 14014, ¶ 165; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1003 (N.D. Ill. 2010).

27.     While Defendant initially had consent to send the text messages to Plaintiff's cellular telephone by virtue of Plaintiff being its customer for wireless service, Plaintiff revoked this consent.

28.     It has long been held that a consumer can revoke his or her consent to receive text messages – especially if the opt-out is done in writing such as through a responsive text message. *See, e.g. SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (Nov. 26, 2012) (confirming that an entity may only send an opt-out confirmation text after the consumer has revoked his or her consent to receive further text messages); *Gonnella v. Delbert Servs. Corp.*, Case No. 14-cv-4921, 2015 U.S. Dist. LEXIS 34465, *9-11 (N.D. Ill. Mar. 19, 2015).

29.     Accordingly, as of no later than August 8, 2016, Defendant did not have consent to send automated text messages to Plaintiff's cellular telephone.

30.     Nonetheless, Defendant continued to send automated text messages to Plaintiff's cellular telephone.

31.     The text messages were not sent for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

5

32.     Accordingly, Defendant SI's text messages to Plaintiff after Plaintiff sent a "STOP" text message violated the TCPA.

33.     Plaintiff has suffered injury-in-fact as a result of Defendant's telephone calls, including, but not limited to:

a)  Device storage. Text messages necessarily take up storage space on cellular telephones and because Defendant's text messages did so without prior express consent, they constitute concrete injury;

b)  Lost time reading, tending to and responding to the unsolicited texts, and deleting the unwanted texts. The time spent reading, addressing, and deleting unsolicited text messages is concrete injury;

c)  Invasion of Privacy. Defendant's continued contact after asking Defendant to stop contact is both a nuisance and an invasion of Plaintiff's privacy, and constitutes concrete injury.

d)  Aggravation and nuisance. Because the text messages came in at approximately 7 AM, they were disruptive to Ms. Campbell's morning routine, e.g. sleep or getting ready for work.

34.     These injuries are both particularized (in that they each affect plaintiff in a personal and individual way) and concrete (in that the above harm actually exists).

35.     Upon information and belief, Defendant SI has sent similar messages to individuals' cellular telephones of numerous other persons after receiving a "STOP" request.

36.     Plaintiff and the Class members are entitled to at least $500 per text message after sending a "STOP" message.

6

37.     Plaintiff and the Class members are entitled to $1,500 per text message after sending a "STOP" message if Defendant's behavior was willful or knowing.

## **CLASS ACTION ALLEGATIONS**

38.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class defined as:

> Plaintiff and all persons within the United States to whose cellular telephone number Defendant SI Wireless, LLC. sent, in the past four years, a text message, other than an opt-out confirmation text message, using an automatic telephone dialing system, after Defendant's records, or the records of any entity with whom Defendant contracted to provide text messaging services, indicate Defendant or that entity received a text message containing the word "STOP" from that cellular telephone number.
>
> ("Class")

39.     Excluded from this class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

40.     The Class members for whose benefit this action are brought are so numerous that joinder of all members is impracticable.

41.     The exact number and identities of the persons who fit within the class are ascertainable in that Defendant SI maintains written and electronically stored data showing:

      a.     The time period(s) during which Defendant SI sent its text messages;

      b.     The telephone numbers to which Defendant SI sent its text messages;

      c.     The telephone numbers which sent a "STOP" text message to Defendant;

      d.     The telephone numbers to which a text message was sent after Defendant

received a "STOP" text message from that telephone number.

42.     The Class is comprised of hundreds, if not thousands, of individuals nationwide.

43.     There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

> a.     Whether Defendant SI used an automatic dialing system in placing its calls;
>
> b.     Whether Defendant SI took adequate steps to permit and/or track revocation of consent;
>
> c.     Whether and to what extent Defendant SI honored "STOP" requests from text message recipients;
>
> d.     Whether Plaintiff and the Class were damaged thereby, and the extent of damages for such violations; and
>
> e.     Whether Defendant should be enjoined from engaging in such conduct in the future.

44.     Plaintiff is a member of the Class in that she received text messages from Defendant SI after she sent the text "STOP."

45.     The claims of Plaintiff are typical of the Class members in that they arise from Defendant's uniform conduct and are based on the same legal theories of all Class members.

46.     Plaintiff and all putative Class members have also necessarily suffered concrete injury, as, by virtue of the class definition being restricted to those who received text messages after asking Defendant to "stop", all Class members spent time tending to Defendant's unwanted text messages, lost storage space as a result of Defendant's text messages, and suffered both a nuisance and invasion of privacy.

47.     Plaintiff has no interests antagonistic to, or in conflict with, the Class.

48.     Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent herself and the Class.

49.     Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class as a whole.

50.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

51.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

52.     Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
(On Behalf of Plaintiff and the Class)

53.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54.     Defendant SI sent text messages to the cellular telephone numbers belonging to Plaintiff and the other members of the Class.

55.     These text messages were sent after Plaintiff and Class members sought to opt out of further text messages by sending a "STOP" text message.

56.     These text messages were all sent using equipment that had the capacity to store telephone numbers to be called or messaged, using a random or sequential number generator, and/or without human intervention.

57.     The post-STOP text messages were all sent without the prior express consent of Plaintiff and the other members of the putative Class.

58.     Defendant SI has therefore violated 47 U.S.C. § 227(b)(1)(A)(iii).

59.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation.

60.     Should the Court determine that Defendant's conduct was willful and/or knowing, Plaintiff and each member of the class are entitled to treble damages in the amount of $1,500 per call, pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Andrea Campbell, individually and on behalf of the Class, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiff Andrea Campbell as the representative of the Class, and appointing her counsel as Class Counsel;

B.     An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227;

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.     An award of actual and statutory damages;

E.     An award of reasonable attorneys' fees and costs; and

F.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** December 8, 2016

/s/ Jeremy M. Glapion
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com