# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREA CAMPBELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SI WIRELESS, LLC, and DOES 1-25,<br><br>Defendants. | Case No. 3:16-CV-1320-NJR-SCW |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Defendant SI Wireless's Motion to Dismiss for Improper Venue or, in the Alternative, to Compel Arbitration (Doc. 10) is pending before the Court. For the reasons set forth below, the Motion to Dismiss is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 2014, Andrea Campbell entered into a service agreement with SI Wireless, LLC (d/b/a MobileNation) to obtain a telephone line. (Doc. 11-1, pp. 4-8; Doc. 12, p. 2). The original agreement did not contain an arbitration clause or class action waiver. (Doc. 11-1, pp. 1-3). The contract, however, did contain the following provision:

> Your service is subject to our business policies, practices, and procedures, which may need to change without notice. Unless otherwise prohibited by law, we can also change prices and any other conditions in this agreement at any time by sending you notice prior to the billing period in which the changes would take effect. If you choose to use your service after we send you the notice of changes, you accept the changes. However, you can end the affected service, without any early termination fee, by contacting us within 30 days after we send you the notice of change.

(Doc. 11-1, p. 2).

SI Wireless amended its Terms and Services to add a paragraph entitled "ARBITRATION/WAIVER OF CLASS ACTION" on August 24, 2015. (Doc. 11-1, pp. 2-3). The Arbitration Clause states:

> **20. ARBITRATION/WAIVER OF CLASS ACTIONS.** Most customer concerns or disputes can be resolved through our customer service representatives. However, if either of us has an issue which cannot be resolved without third party intervention, you and we both agree to submit to binding arbitration before the American Arbitration Association. This means that **all disputes arising from or relating in any way to your Services, whether under these Terms & Conditions or not, will be resolved through arbitration,** not in court or through judge or jury. Moreover, to the fullest extent allowed by law both of us agree to waive any rights to pursue a claim arising from or relating to these Terms & Conditions or the Services as a class action; that is, you or we will not join a claim with the claim of any other person or entity or pursue a claim on behalf of any other person or entity. The arbitration shall take place in McCracken County, Kentucky or Madison County, Tennessee, at your option. The waivers in this section continue in force and effect after the termination of this agreement. **Only actions relating to failure to timely pay billed charges, such as service charges and related fees and taxes (collection claims), may be brought in a court;** provided that all such actions will be brought in small claims or another court with jurisdiction; and further provided that if any counterclaims or claims unrelated to collection are asserted in the action by any party then the case shall be transferred to arbitration.

(Doc. 11-1, pp. 2-3) (emphasis added).

To notify customers of this modification to the contract, SI Wireless purportedly sent the following text message on either August 24 or August 25, 2015:

> SMS: MobileNation Updated Terms and Policies – Please review by visiting http://mymobilenation.com/terms/ Thanks for being a MobileNation member.

(Doc. 11-1, p. 2).

In her Memorandum in Opposition, Campbell asserts the link provided in the text message did not actually connect to the arbitration clause language. (Doc. 12, p. 6). Rather, it linked to a page titled "Policies & Terms" that contained two paragraphs relating to "Network Management" and "Surcharges." (Doc. 12, p. 6; Doc. 12-1, p. 2).[1] Further, Ms. Campbell states she does not recall ever seeing this text message or the arbitration clause language. (Doc. 12, p. 3).

About nine months later, Campbell entered into a second contract with SI Wireless for a different phone line. (Doc. 11-1, p. 3). Nothing in the second contract appears to refer to the prior contract or incorporate the prior phone line into the new contract. (Doc. 11-1, pp. 4-8). The second contract contains an arbitration clause. (Doc. 11-1, pp. 13-18).

At some point in 2016, Campbell apparently fell behind on her payments. (Doc. 12, p. 3). SI Wireless began sending automated text messages to the phone associated with the first contract, telling her to make a payment or risk having her service suspended. (*See* Doc. 12, p. 3; *See also* Doc. 12, p. 11, n. 9). Campbell alleges the text messages were disruptive and that she replied to one of the texts with the single word "stop," but the texts continued. (Doc. 12, p. 3). Campbell then called SI Wireless and spoke with a representative who told her there was no way to stop the texts. (Doc. 12, p. 3). Thus, on December 8, 2016, Campbell filed a putative class action complaint against SI Wireless under the Telephone Consumer Protection Act, 47 U.S.C.

---

[1] Included on the same web page are three hyperlinks, one of which is titled "terms and conditions." (*See* Doc. 12-1, p. 2). It is unclear from the memorandum whether this second hyperlink connects to the arbitration language at issue. The Court finds, however, that even if the hyperlink did connect to the arbitration information, it is not sufficient to provide notice to Campbell. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-35 (7th Cir. 2016) (court cannot presume a person who clicks on a box on a computer screen has notice of content that requires further action).

§227, *et seq*. (Doc. 1). In response, SI Wireless filed the pending Motion to Dismiss for Improper Venue or, in the Alternative, to Compel Arbitration. (Doc. 10).

## ANALYSIS

Under Rule 12(b)(3), a party may move to dismiss an action when it is filed in an improper venue. FED. R. CIV. P. 12(b)(3). The plaintiff bears the burden of proving venue is proper. *See Moore v. AT&T Latin America Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001); *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969). When assessing a motion to dismiss for improper venue, however, the Court must take the allegations in the complaint as true unless they are contradicted by affidavits, construe facts and draw reasonable inferences in favor of the plaintiff, and must resolve factual disputes in the plaintiff's favor. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011).

Here, the claim of improper venue is based on an arbitration clause. (Doc. 10, pp. 1-2). The arbitration language includes a forum selection clause, requiring any arbitration to take place in McCracken County, Kentucky, or Madison County, Tennessee. (Doc. 11, pp. 2-3). If the arbitration clause is enforceable, venue would not lie with this Court because only a district court in one of the forums selected has authority to compel arbitration. *Haber v. Biomet, Inc.* 578 F.3d 553, 558 (7th Cir. 2009) (citing 9 U.S.C. § 4). Thus, the question before the Court is whether the arbitration clause is enforceable.

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 *et seq.*, the party demanding arbitration has the burden of proving: (1) the existence of a written agreement to arbitrate; (2) the parties' dispute falls within the scope of the arbitration

agreement; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).[2] The Supreme Court has repeatedly emphasized that arbitration is a creature of contract. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)). The FAA's provisions therefore only bind parties for those disputes they have agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003).[3]

Here, the text message and link used by SI Wireless to notify Campbell of the arbitration clause were inadequate to create an agreement to arbitrate. The Seventh Circuit, addressing a similar issue in *Sgouros v. TransUnion Corp.*, applied a "reasonable communicativeness test" to determine whether a particular form of electronic notice is sufficient.[4] *Sgorous*, 563 U.S. at 1034-35. Under that test, the Court must determine whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the

---

[2] Campbell does not dispute she has refused to arbitrate. (Doc. 12, p. 4). Thus, the Court finds the third element conceded.

[3] The question of whether the parties have agreed to arbitrate is governed by state-law principles of contract formation. *First Options*, 514 U.S. at 944. Normally, the law applicable to a contract is that which the parties intended. *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (Ill. 1975). Here, the contract at issue does not appear to have a choice of law provision. (Doc. 11-1). SI Wireless cites only to Illinois law in its underlying motion and makes no argument to the Court indicating another state's laws are applicable. (Doc. 11). Campbell states a question over which state's contract law applies may exist. (Doc. 12, p. 4, n.1). As a result, she briefs both Illinois and Tennessee law. (Doc. 12). The Court finds, however, that the cases cited by Campbell indicate that Tennessee applies a similar legal standard to Illinois and therefore a similar analysis would exist under either state's laws. (Doc. 12, p. 5, n. 3). In the absence of a specific request by the parties to apply another state's law, and given the similarities in the law at issue here, the Court finds it appropriate to apply Illinois law to the question of whether the parties agreed to submit this dispute to arbitration. *See S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 672 (7th Cir. 2002).

[4] This test is based on Illinois case law relating to cruise-ship tickets. *Sgouros*, 817 F.3d at 1034 (referencing *Walker v. Carnival Cruise Lines, Inc.*, 889 N.E.2d 687, 694 (Ill. App. Ct. 2008)). A similar test is utilized by the State of Tennessee. *See Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 219 (6th Cir. 1983).

assumption that the purchaser received reasonable notice of those terms. *Id.* Although the original agreement of the parties allowed SI Wireless to change the terms of the contract simply by notifying Campbell prior to the billing period in which the change would take effect (Doc. 11-1, p. 2), SI Wireless has failed to show the text message sent to Campbell provided any such notice. The evidence[5] presented indicates the link in the relevant text connected to a web page that did not contain the arbitration language. (Doc. 12, p. 6; Doc. 12-1, p. 2). SI Wireless has provided no evidence or argument to the contrary. (Doc. 11, pp. 8-10). There is no evidence, therefore, that the terms of the arbitration clause were communicated to Campbell or that she was provided with notice that SI Wireless intended to add an arbitration clause. Thus, there is no enforceable arbitration agreement arising out of the first contract.

The Court notes Campbell entered into a second contract with SI Wireless in 2016. (Doc. 11-1, pp. 13-18). The second contract includes an arbitration clause, but relates to different phone number than the one at issue in Campbell's complaint for violation of the Telephone Consumer Protection Act. (Doc. 11-1, pp. 13-18). SI Wireless provided the Court with a copy of the second contract, but failed to explain why an arbitration agreement in a contract for a different phone is relevant. (Doc. 11, pp. 1-15). The Court infers SI Wireless is attempting to argue the arbitration clause in the second contract somehow relates back to the phone covered by the first contract.

Whether a particular claim is arbitrable depends on the relationship of the claim to the subject matter of the arbitration clause. *In re Oil Spill by Amoco Cadiz off Coast of*

---

[5] Here, Campbell introduces evidence of an Internet Archive Wayback Machine snapshot of the website linked to in SI Wireless's text five days after the text was allegedly sent. (Doc. 12, p. 6, n. 5).

*France*, 659 F.2d 789, 795 (7th Cir. 1978). Nothing in the second contract expressly states the intent of the parties to modify or incorporate the arbitration clause into the earlier contract. Assuming for the sake of argument that the arbitration clause in the second contract can relate back to the subject of the first, the arbitration clause here contains language applying it to "all disputes *arising from* or *relating* in any way to your Services…" (Doc. 11-1, p. 17) (emphasis added). Unfortunately for SI Wireless, the arbitration clause also contains an exception for "actions *relating to* failure to timely pay billed charges…" (Doc. 11-1, p. 17). Such actions are explicitly allowed to be brought in "small claims or another court with jurisdiction." (Doc. 11-1, p. 17). If the texts sent by SI Wireless *arise from* or *relate to* Campbell's failure to pay her bill on time, the arbitration clause will be applicable, but so will the exception. Thus, even if the arbitration clause in the second contract can relate back to the phone line in the first contract, the explicit terms of the arbitration clause exclude Campbell's complaints from the mandatory arbitration provision.

## Conclusion

The text sent by SI Wireless was inadequate to communicate its intent to add a mandatory arbitration clause to the original contract or to support a finding that Campbell received reasonable notice of such terms. Thus, SI Wireless's attempt to modify the first contract by adding the arbitration clause fails. Further, the second contract does not mandate arbitration because the plain language of the clause carves out a specific exception for actions related to the failure to pay bills in a timely manner.

Because SI Wireless has failed to prove an arbitration agreement binds the parties in these circumstances, and no other claims of improper venue are raised, SI Wireless's Motion to Dismiss for Improper Venue, or in the Alternative, to Compel Arbitration (Doc. 10) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   September 5, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**