# APPENDIX 4

Case 3:16-cv-01320-NJR-SCW Document 20-4 Filed 10/03/17 Page 2 of 10 Page ID #344

Matter of Cargo Airline Association Petition for Expedited..., 29 FCC Rcd. 3432...

29 FCC Rcd. 3432 (F.C.C.), 29 FCC Rcd. 5056, 29 F.C.C.R. 3432, 29 F.C.C.R. 5056, 59 Communications Reg. (P&F) 1509, 2014 WL 1266071

NOTE: An Erratum is attached to the end of this document

Federal Communications Commission (F.C.C.)
Order

IN THE MATTER OF CARGO AIRLINE ASSOCIATION PETITION FOR EXPEDITED DECLARATORY RULING RULES AND REGULATIONS IMPLEMENTING THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

CG Docket No. 02-278
FCC 14-32
Adopted: March 27, 2014
Released: March 27, 2014

\***1  \*5056  \*\*3432  By the Commission: Commissioner O'Rielly concurring and issuing a separate statement.

## I. INTRODUCTION

1. The Telephone Consumer Protection Act (TCPA)[1] protects consumers from unwanted voice calls and texts that are made with autodialers and with prerecorded messages. The TCPA and our rules help consumers avoid unwanted communications that can represent annoying intrusions into daily life and, in some cases, can cost them financially. Congress gave the Commission the authority to exclude from the TCPA's prohibitions calls and texts that are not charged to the called party, with conditions to minimize any harm to consumer privacy.[2] In this Order, we use that authority to allow package delivery companies to alert wireless consumers about their packages, as long as consumers are not charged and may easily opt out of future messages if they wish, among other pro-consumer conditions. By granting the request of the Cargo Airline Association (CAA)[3] to the extent noted in this Order, we pave the way for wireless consumers to receive package delivery notifications that we expect, based on their popularity with residential[4] consumers, will be welcome both as a convenience and as a way to guard against package theft.

## II. BACKGROUND

### A. The Telephone Consumer Protection Act

2. In 1991, Congress enacted the TCPA in an effort to address certain practices thought to be an invasion of consumer privacy and a risk to public safety.[5] In relevant part, the TCPA and our implementing rules prohibit the use of an artificial or prerecorded voice or an automatic telephone dialing system (autodialer) to make any non-emergency calls without prior express consent to any telephone **3433 number assigned to cellular telephone services.[6] Section 227 of the Act defines "automatic telephone dialing system"" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[7] The Commission has concluded that the TCPA's protections encompass both voice calls and text messages, including short message service (SMS) calls, if the call is made to a telephone number assigned to such service.[8] Section 227(b)(2)(C) authorizes the

Commission to exempt from this provision calls to a number assigned to a wireless service that are not charged to the consumer, subject to conditions the Commission may prescribe to protect consumers' privacy rights. [9]

**B. The CAA Petition**

3. On August 17, 2012, CAA filed its Petition seeking clarification of the TCPA as it applies to autodialed or prerecorded package delivery notification calls made to consumers' wireless telephone numbers. According to its Petition, CAA's member companies deliver packages on behalf of a large number of companies and individuals. [10] CAA's membership currently provides delivery notifications to consumers' residential phones, which is permissible without consumer consent under the TCPA, and seeks to do the same to consumers' wireless phones, either by voice or text. [11] CAA argues that the increased use of wireless phones as many consumers' primary or exclusive phone necessitates this clarification. [12]

***2** 4. CAA states that package delivery companies generally do not have any contact with a recipient until a package is shipped and that it would be impossible, given the volume of daily package deliveries, to manually dial each delivery notification call to wireless phone numbers or to obtain prior express consent from each package recipient before notifying the recipient on his or her phone. [13] CAA also argues that delivery notifications benefit consumers because they significantly reduce package theft from front porches and building lobbies. [14] One of CAA's members reports that when a signature is required for a delivery, pre-delivery notification calls to consumers' residential phones improves the likelihood of a successful delivery by 30 percent. [15] CAA also states that consumers rarely opt-out of notifications to residential phones. [16]

5. CAA states that package delivery notifications do not contain telemarketing, solicitation, **3434** or advertising, or raise other TCPA concerns. [17] CAA asserts that the notifications its members currently provide to residential numbers provide "sufficient details to help package recipients know what is required for delivery, when to expect delivery, and how to follow-up with the delivery company." Examples of the specific information contained in the package delivery notifications include the expected date and time of delivery, the tracking number, the delivery company's toll-free telephone number and web address for customer service, whether a signature is required, and how to opt out of future notifications. If a package can be picked up by the consumer at a delivery company's facility, the notification will include that facility's address and hours of operation. CAA members would provide the same information in package delivery notifications via voice or text message to wireless numbers if this petition is granted. [18]

6. CAA maintains that in the case of package delivery, where the package sender initiates shipment and provides all of the recipient's necessary contact information, the delivery company should be able to rely upon representations from the package sender that a package recipient consents to receiving notifications about that package. [19] CAA requests that the Commission clarify that for informational calls related to package delivery via voice or text messages to wireless numbers, which can permissibly be made using an autodialer under the TCPA with the called party's oral prior express consent, the package delivery company can rely upon a representation by a package sender that it has obtained the requisite consent from the consumer. [20]

7. In the alternative, CAA asks the Commission to declare that package delivery notifications are exempt from the TCPA's restrictions on autodialed and prerecorded calls and messages to wireless telephone numbers. [21] The TCPA authorizes the Commission "by rule or order" to exempt, from the restriction on autodialed and prerecorded calls and messages to wireless telephone numbers, such calls and messages "that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights the provision is intended to protect." [22] CAA asserts that the Commission should recognize the

Case 3:16-cv-01320-NJR-SCW Document 20-4 Filed 10/03/17 Page 4 of 10 Page ID #346

Matter of Cargo Airline Association Petition for Expedited...; 29 FCC Red. 3432...

public interest in receiving time-sensitive package notifications and issue a declaratory ruling clarifying that these notifications made through autodialed and prerecorded calls and messages are not restricted by the TCPA.[23] Subsequent to filing its Petition, CAA more fully described this alternative request, and proposed conditions to satisfy the TCPA. In its *ex parte* filings, CAA clarifies that it has requested an exemption for non-telemarketing wireless package delivery notifications that are not charged to the called party utilizing several options available to send free-to-end-user text messages to wireless telephone numbers that work with all four nationwide wireless carriers.[24] The Commission has not previously exercised its authority under the statutory exemption provision.[25]

**\*\*\*3 \*\*3435** 8. The Commission sought comment on the issues raised in CAA's Petition.[26] Five parties commented, including two individuals.[27] The Commission later sought comment on CAA's ex parte presentation[28] focusing on its alternative argument that the Commission should exempt its free-to-end-user text messages. We received two comments supporting the request, one comment opposing the request, and one comment that asks the Commission to grant the intermediary consent request.[29]

### III. DISCUSSION

9. We grant CAA's request to exempt its proposed free-to-end-user notifications to consumers' wireless phones, subject to certain conditions.[30] We find that CAA has identified means to ensure the notifications are not charged to consumers, and a set of conditions on the notifications that, with the modifications we describe here, are consistent with the TCPA's privacy goals.

10. At the outset, we address two threshold matters. First, we note that CAA does not dispute that the TCPA's restrictions on the use of autodialers and prerecorded messages apply to the notifications at issue. Instead, it requests that the Commission either grant an exemption from that requirement or clarify the consumer consent requirement in this context.[31] Because we grant CAA's exemption request, we do not reach its request that we clarify that it may rely on consumer consent to receive delivery notifications obtained via a third party. Accordingly, we dismiss the latter request without prejudice.

11. Second, we find that we may make a determination about our exemption authority in an order, without rulemaking, because the TCPA provides us the authority to exempt such calls and messages by "rule or order." No party challenges this proposition. We further find that in granting the Commission authority to exempt these notifications from the TCPA's restrictions, Congress gave us authority to exempt them by order from our implementing rules as well. We note that our rules closely track the TCPA's requirements,[32] and that no commenter opposes the conclusion that continuing to subject these notifications to the rules would give the exemption little effect.[33]

12. Turning to the merits, we first find that CAA has shown that its members are capable of satisfying the first part of our section 227(b)(2)(C) inquiry — that its proposed package delivery **\*\*3436** notificationswill "not [be] charged to the called party."[34] CAA states that its members are capable of providing notifications that are not charged to consumers by, among other options, using third-party solutions that can be used for subscribers of the four nationwide wireless carriers.[35] CAA states that it is working with other carriers toward similar capability.[36] We clarify that we interpret the TCPA's "no charge" requirement to preclude exempting notifications that count against the recipient's plan minutes or texts.[37]

Case 3:16-cv-01320-NJR-SCW Document 20-4 Filed 10/03/17 Page 5 of 10 Page ID #347

Matter of Cargo Airline Association Petition for Expedited..., 29 FCC Red. 3432...

***4** 13. Next, we find that CAA's proposed conditions, with slight modification, will protect consumers' privacy interests. CAA proposes seven conditions,[38] and we adopt four of them without modification. We adopt the remaining three with modest, but important, changes essential to the protection of consumers' privacy interests. We note that these conditions are message-specific, and that a delivery company may not claim this exemption for any text that is charged to the called party or fails to meet the conditions outlined in this Order. Likewise, a delivery company will be liable only for messages that are not subject to this exemption, and will not be liable for any message that is not charged to the called party and is compliant with the stated conditions.[39] Finally, we note that the Commission has the discretion under the Communications Act to initiate enforcement actions[40] regarding delivery companies that send non-consensual notifications to wireless numbers that are charged to the called party or do not comply with the conditions outlined in this Order.

14. First, CAA proposes that package delivery companies seek to minimize the number of delivery notifications and states that only one notification "should" be sent per package.[41] As proposed, this condition could result in consumers receiving multiple notifications before any opt-out election is implemented. We recognizethat the TCPA is intended to protect against multiple, unwanted notifications to a wireless phone that intrudes on the privacy interests of consumers. At the same time, while the record indicates that a single notification improves the odds of a successful delivery when a signature is required, more than one delivery attempt and/or notificationmay still be necessary to achieve a successful delivery.[42] We also believe that deliveries requiring a signature often may have some sensitivity, such as particularly valuable items being delivered to a residence or important business or legal documents, and that such sensitivity may not attach as frequently to deliveries not requiring a signature.

15. Balancing these considerations, we modify CAA's proposed condition so that no more than one notification may be sent to a consumer for each package, except that one additional notification may be sent to a consumer for each of the following two attempts[43] to obtain the recipient's signature **3437** when the signatory was not available to sign for the package on the previous delivery attempt.[44] Thus, a consumer who has not provided prior express consent may be sent no more than one notification to a wireless telephone number for packages not requiring a signature for delivery and no more than three such notificationsin total for deliveries requiring a signature.

16. Second, CAA proposes that each package delivery notification must include information enabling a consumer to opt out of future delivery notifications. CAA describes the mechanics of the opt-out mechanism for voice calls answered by a live person and for text messages. According to CAA, calls answered by a consumer must provide an opportunity to opt out by voice or by pressing a key, while texts must include the ability for a consumer to opt-out by sending ""STOP" in a reply text. While we agree that it is necessary to ensure that each notification includes opt-out information, CAA fails to address situations in which a voicemail message is left for a consumer. In such cases, the consumer can neither opt out by voice or by pressing a key during the call nor by sending a reply text. Therefore, consistent with CAA's proposal that each notification must include opt-out information, we adopt a condition that, in addition to the voice and key-press options CAA proposed, each voice notification must include a toll-free number that the consumer can call to opt out of future package delivery notifications.[45]

***5** 17. Third, CAA proposes that package delivery companies must honor opt-out requests, but does not specify a time within which the opt-out request must be honored.[46] Without a requirement that opt-out requests be honored within a reasonable time, consumer opt-out requests may not be implemented for an extended period of time, potentially subjecting consumers to multiple, unwanted package delivery notification calls contrary to the privacy interests that the TCPA is intended to protect. In the absence of a specific proposal in the record, we look to our rules and orders for an analogous situation for guidance. Our TCPA rules regarding telemarketing calls require that telemarketers maintain a company-specific do-not-call list and that companies honor do-not-call requests "within a reasonable time from the date such request is made" but "may not exceed thirty days from the date of

Case 3:16-cv-01320-NJR-SCW Document 20-4 Filed 10/03/17 Page 6 of 10 Page ID #348

Matter of Cargo Airline Association Petition for Expedited..., 29 FCC Red. 9452...

such request." [47] We adopt the same requirement for the package delivery notifications at issue here. We believe that this requirement, as it does in the context of telemarketing calls, adequately protects consumers from unwanted calls while allowing package delivery companies a reasonable time in which to implement opt-out elections. [48]

18. To summarize, we adopt the following conditions for each text message utilizing the exemption we grant today:
1) a notification must be sent, if at all, only to the telephone number for the package recipient;

2) notifications must identify the name of the delivery company
and include contact information for the delivery company;

3) notifications must not include any telemarketing, solicitation, or advertising content;

4) voice call and text message notifications must be concise, generally one minute or less
in length for voice calls and one message of 160 characters or less in length for text messages;

5) delivery companies shall send only one notification (whether by voice call or text message) per package, except that one additional notification may be sent to a consumer for each of the **3438 following two attempts to obtain the recipient's signature when the signatory was not available to sign for the package on the previous delivery attempt;

6) delivery companies relying on this exemption must offer parties the ability to opt out
of receiving future delivery notification calls and messages and must honor the opt-out requests
within a reasonable time from the date such request is made, not to exceed thirty days; and,

7) each notification must include information on how to opt out of future delivery notifications; voice call
notifications that could be answered by a live person must include an automated, interactive voice- and/
or key press-activated opt-out mechanism that enables the called person to make an opt-out request prior
to terminating the call; voice call notifications that could be answered by an answering machine or voice
mail service must include a toll-free number that the consumer can call to opt out of future package delivery
notifications; text notifications must include the ability for the recipient to opt out by replying "STOP."

***6 19. Apart from consumers not being charged for the notifications and the conditions to ensure consumers' privacy rights are protected, we find that these notifications are the types of normal, expected communications the TCPA was not designed to hinder, thus further persuading us that an exemption is warranted. [49] We believe that consumers generally desire, expect, and benefit from, package delivery notifications. Commenter GroupMe supports this position and argues that package delivery notifications are communications that consumers wish to receive. [50]

20. Our conclusions are supported by evidence of residential consumers' experience, who already receive these notifications and have not complained to us that they are unwanted. [51] The record provides no reason to question CAA's assertion that they would be just as welcomed by consumers on their wireless phones. CAA states that such notifications help to reduce package theft, which has been a significant concern for its members and their customers. [52] Further, CAA reports that 61 percent of residential consumers who missed a delivery requiring a signature did not know when to expect the delivery and, in instances where a signature is required, pre-delivery notification calls to consumers' residential phones improves the likelihood of a successful delivery by 30 percent. [53] CAA asserts that its members can already notify residential consumers about deliveries and that wireless consumers should be able to receive the same services. [54] As noted by CAA, there is a growing trend toward wireless-only households, [55] and the Commission's analysis of wireless data demonstrates that

Case 3:16-cv-01320-NJR-SCW Document 20-4 Filed 10/03/17 Page 7 of 10 Page ID #349

Matter of Cargo Airline Association Petition for Expedited...; 29 FCC Red. 9452...

the number of adults who rely exclusively on mobile wireless for voice service has increased significantly in recent years to approximately 32.3 percent in the second half of 2011, compared to 27.8 percent of all adults in the **3439 second half of 2010 and 22.9 percent in the second half 2009.[56] We are therefore persuaded that consumers who provide a wireless telephone number as their contact number will enjoy similar benefits.

21. Our grant, to the extent indicated herein, of CAA's petition is limited to package delivery notifications to consumers'wireless phoneseither by voice or text and only applies so long as those calls are not charged to the consumer recipient, including not being counted against the consumer's plan limits on minutes or texts, and comply with the conditions we adopt today. In addition to the limited context within which package delivery companies will be making autodialed or prerecorded package delivery notification calls to consumers' wireless numbers, the conditions adopted herein to protect consumers' privacy interests are critical to our exercise of our statutory authority to grant an exemption. Taken as a whole, we find that these conditions simultaneously fulfill our statutory obligation to protect consumers' privacy interest in avoiding unwanted calls while allowing package delivery companies a reasonable time in which to implement opt-out elections. We clarify that, as required by the statute, except in an emergency or with the prior express consent of the consumer, any party who sends an autodialed or prerecorded package delivery notification to a wireless number that is not in full conformance with the requirements we adopt today may not take advantage of this exemption and risks violating the TCPA.

### IV. ORDERING CLAUSES

***7 22. For the reasons stated above, IT IS ORDERED, pursuant to sections4(i), 4(j) and 227 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 154(i), 154(j),227, and sections 1.2and 64.1200 of the Commission's Rules, 47 C.F.R. §§ 1.2, 64.1200 that the Petition for Expedited Declaratory Ruling filed by Cargo Airline Association on August 17, 2012 IS GRANTED IN PART and IS OTHERWISE DISMISSED to the extent indicated herein.

23. IT IS FURTHER ORDERED that this Order shall be effective upon publication in the Federal Register.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

Erratum

DA 14-636

Erratum Released: May 12, 2014

By the Acting Chief, Consumer and Governmental Affairs Bureau:

On March 27, 2014, the Commission released an*Order*, FCC 14-32, in the above-captioned proceeding. This Erratumcorrectsthe first sentence in paragraph 18 by replacing "text message utilizing" with "delivery notification (voice call or text message) utilizing."

FEDERAL COMMUNICATIONS COMMISSION

Kris Anne Monteith

Acting Chief
Consumer and Governmental Affairs Bureau

## **3440 APPENDIX

### List of Commenters

| Commenter | Abbreviation |
| --- | --- |
| Airlines for America (filed by Counsel Doug Mullen) | A4A |
| GroupMe | GroupMe |
| Gerald Roylance | |
| Joe Shields | |

### Reply Commenters

| | |
| --- | --- |
| American Bankers Association | ABA |
| Steward Abramson | |
| Robert Biggerstaff | |
| Cargo Airlines Association | CAA |

**3441 CONCURRING STATEMENT OF COMMISSIONER MICHAEL O'RIELLY

***8 Re: *Cargo Airline Association Petition for Expedited Declaratory Ruling; Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*; CG Docket No. 02-278

Re: *GroupMe, Inc./Skype Communications S.A.R.L Petition for Expedited Declaratory Ruling; Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*; CG Docket No. 02-278

I concur with these two items because of the good that they accomplish. They will provide much needed clarity in an area where uncertainty can inhibit legitimate businesses from offering consumer-friendly applications and services, and can breed litigation. They will also directly benefit consumers by enabling them to receive package delivery notifications they want and expect, and by ensuring that they can take advantage of a service that helps connect groups of friends, families, and colleagues.

My only hesitation is on the applicability of the TCPA to text messages. The TCPA was enacted in 1991 — before the first text message was ever sent. I was not at the Commission when it decided that the TCPA does apply to text messages, and I may have approached it differently. It would have been better if the Commission had gone back to Congress for clear guidance on the issue. I will look for opportunities, like the ones presented here, to ensure that our rules do not stand in the way of innovation and certainty that benefits consumers and businesses alike.

Footnotes

1   *Codified as* 47 U.S.C. § 227.
2   *See* 47 U.S.C. § 227(b)(2)(C).

| | |
|---|---|
| 3 | *See Cargo Airline Association*, Petition for Expedited Declaratory Ruling and Clarification, CG Docket No. 02-278 (filed Aug. 17, 2012) (*Petition*). |
| 4 | We use "residential" to mean "residential wireline" consumers for purposes of this order, and to be consistent with the TCPA's terminology. |
| 5 | *See* 47 U.S.C. § 227. |
| 6 | *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). |
| 7 | 47 U.S.C. § 227(a)(1); *see also* 47 C.F.R. § 64.1200(f)(2) ("The terms *automatic telephone dialing system* and *autodialer* mean equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers."). |
| 8 | *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, CG Docket No. 02-278, 18 FCC Rcd 14014, 14115, para. 165 (2003) (*2003 TCPA Order*); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call"). |
| 9 | 47 U.S.C. § 227(b)(2)(C). |
| 10 | *See Petition* at 2. |
| 11 | *Id.* at 1-2, 8-9. |
| 12 | *See id.* at 8-9. |
| 13 | *See id.* at 5. |
| 14 | *See id.* at 2. |
| 15 | *See id.* at 3. |
| 16 | *See* CAA Notice of ExParte Presentation, CG Docket No. 02-278, at 2 (Feb. 27, 2013). CAA states that the information available shows an opt-out rate of less than 0.5 percent for residential consumers. |
| 17 | *See Petition* at 7. |
| 18 | *See* CAA Notice of ExParte Presentation, CG Docket No. 02-278, at 2 (Feb. 27, 2013). |
| 19 | *See Petition* at 4-5. |
| 20 | *See id.* at 4. |
| 21 | *See id.* at 6. |
| 22 | *See* 47 U.S.C. § 227(b)(2)(C). |
| 23 | *See Petition* at 7. |
| 24 | *See id.* |
| 25 | In 1992, the Commission concluded that cellular carriers need not obtain additional consent from their cellular subscribers prior to initiating autodialed or prerecorded calls for which the cellular subscriber is not charged. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, 8774, para. 45 (1992) (*1992 TCPA Order*). Congress, however, added the Section 227(b)(2)(C) exemption provision to the statute *after* this 1992 Commission ruling. *See* Telephone Disclosure and Dispute Resolution Act, Pub. L. No. 102-556, 106 Stat 4181 (1992). |
| 26 | *See Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Rulemaking from Cargo Airlines Association*, CG Docket No. 02-278, Public Notice, 27 FCC Rcd 13028 (CGB 2012). |
| 27 | *See* App. |
| 28 | *See* CAA Notice of ExParte Presentation, CG Docket No. 02-278 (Nov. 19, 2013). |
| 29 | *See Consumer and Governmental Affairs Bureau Seeks Comment on Revised TCPA Exemption Proposal From Cargo Airlines Association*, CG Docket No. 02-278, Public Notice, DA 13-2312 (Dec. 3, 2013). |
| 30 | *See* CAA Notice of ExParte Presentation, CG Docket No. 02-278, at 1-3 (Nov. 19, 2013). |
| 31 | *See Petition at* 4. |
| 32 | Specifically, the requirements in 47 C.F.R. § 64.1200(a)(1)(iii) closely track those in 47 U.S.C. § 227(b)(1)(iii). *See also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Notice of Proposed Rulemaking, 7 FCC Rcd at 2,376, at 2737 para. 8. (1992) (noting that the proposed rules "follow closely the language of the TCPA"); *1992 TCPA Order*, 7 FCC Rcd at 8754-55, para. 5 (noting that the Commission adopted the rules "as proposed"). |
| 33 | The Commission may waive its rules for good cause. 47 C.F.R. § 1.3. To the extent it is necessary to do so in light of the statutory exemption granted herein, we find good cause exists to waive the corresponding requirements contained in section |

| | |
|---|---|
| | 64.1200(a)(1)(iii) of our rules, 47 C.F.R. § 64.1200(a)(1)(iii), to the same extent and on the same conditions as the exemption granted herein. |
| 34 | 47 U.S.C. § 227(b)(2)(C). |
| 35 | *See* CAA Ex Parte Presentation, CG Docket No. 02-278, at 2 (Nov. 19, 2013). |
| 36 | *See*CAA Notice of ExParte Presentation, CG Docket No. 02-278, at 2 (Jan. 10, 2014) |
| 37 | *SeeRules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, CG Docket No. 02-278 27 FCC Rcd 1830, 1840 para. 25 (2012) (stating that "the costs of receiving autodialed or prerecorded telemarketing calls to wireless numbers often rests with the wireless subscriber, even in cases where the amount of time consumed by the calls is deducted from a bucket of minutes"). |
| 38 | *See* CAA Notice of ExParte Presentation, CG Docket No. 02-278, at 1-3 (Nov. 19, 2013). |
| 39 | In other words, failing to comply with a condition with respect to one call does not affect the exemption for any other call; loss of exempt-status applies on an individual-text-by-individual-text basis. |
| 40 | *See* 47 U.S.C. § 503. |
| 41 | *Seeid.* at 2. |
| 42 | *See* Petition at 3 (for packages requiring a signature, pre-delivery notification to residential phone improves odds of successful delivery by 30%). |
| 43 | At least one major member of the delivery industry, UPS, typically makes three delivery attempts. *See* http:// www.ups.com/content/us/en/resources/service/infonotice.html (last visited March 4, 2014). |
| 44 | There must, of course, be no charge to the consumer for such subsequent notifications.*See* para. 21, *infra*. |
| 45 | This approach is consistent with the Commission's rules for consumer opt out of prerecorded telemarketing calls. *See* 47 C.F.R. § 64.1200(b)(3) (requiring, among other things, that prerecorded telemarketing messages left as a voicemail provide a toll-free call-back number for opt-out purposes). |
| 46 | No commenter proposes a timeframe either. |
| 47 | 47 C.F.R. § 64.1200(d)(3). |
| 48 | *Id.* |
| 49 | *Cf., e.g.*,H.R. Rep. 102-317 at 17 (1991) ("[t]he restriction...does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications."). |
| 50 | Reply Comments of GroupMe at 4-5. |
| 51 | Between January 1, 2012 and December 31, 2013, the Commission received no complaints regarding legitimate notification calls to residential phones, and only one to a mobile phone. The complaints we did receive were from consumers concerned about calls from scammers that appear to be posing as package delivery companies. We also received one complaint from a wireless consumer, but regarding delivery of a package to another consumer at an address over 100 miles away. [1] |
| 52 | Package theft at residences is a significant factor in seeking this exemption. *See* Petition at 2-3, nn.6-8 (citing reports of package theft). |
| 53 | *See Petition* at 3. |
| 54 | *See* CAA Notice of Ex Parte Presentation, CG Docket No. 02-278, at 11 (Feb. 6, 2013). |
| 55 | *See Petition*at 8-9; CAA Notice of ExParte Presentation, CG Docket No. 02-278, at 11 (Feb. 6, 2013). |
| 56 | *See Implementation of Section 6002(b) of the Omnibus Budget Reconciliation Act of 1993 Annual Report and Analysis of Competitive Market Conditions With Respect to Mobile Wireless, Including Commercial Mobile Services*, WT Docket 11-186, 28 FCC Rcd 3700, 3725 (2013). |

29 FCC Rcd. 3432 (F.C.C.), 29 FCC Rcd. 5056, 29 F.C.C.R. 3432, 29 F.C.C.R. 5056, 59 Communications Reg. (P&F) 1509, 2014 WL 1266071

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.