### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREA CAMPBELL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> SI WIRELESS, LLC, and DOES 1-25, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )    Case No. 3:16-CV-1320-NJR-SCW |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge**

Andrea Campbell ("Campbell") filed this putative class action against SI Wireless, LLC ("SI") and Does 1-25,[1] alleging SI violated the Telephone Consumer Protection Act ("TCPA" or "Act"),[2] 47 U.S.C. § 227, *et seq.*, by sending automated text messages to her wireless telephone without her consent (Doc. 1). This matter is currently before the Court on SI's Motion for Judgment on the Pleadings (Doc. 19). For the following reasons, the Court grants SI's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

SI was Campbell's cellular carrier at all times relevant to her complaint (*See* Doc. 1). On August 8, 2016, SI sent Campbell a text message regarding the impending suspension of her account due to an unpaid bill (Doc. 1, pp. 1-2). Campbell replied

---

[1] The Court stayed discovery pending disposition of SI's Motion for Judgment on the Pleadings. Does 1-25 have not yet been identified.

[2] "TCPA" and "Act" in this Order refer collectively to the statute and the FCC's rules and regulations.

"STOP" to the message, indicating she no longer wanted to receive account updates via text messages (*Id.* at p. 2). Nonetheless, Campbell received approximately four additional texts from SI, which Campbell contends was in violation of the TCPA (*Id.*).

SI posits that the text messages at issue here did not violate the TCPA because the TCPA does not prohibit communications between a cellular carrier and its customers so long as the customer is not charged for the communication (Doc. 20, pp. 1-2). Under this theory, SI moves the Court for judgment on the pleadings (Doc. 19). Campbell asserts, however, that a cellular carrier needs its customers' consent in order to send them text messages, and she revoked her consent to receive text messages from SI when she replied "STOP" to the message from August 8, 2016 (Doc. 1, p. 2). According to Campbell, SI is therefore not immune to liability under the TCPA, and judgment on the pleadings is not appropriate (*See* Doc. 24).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the plaintiff's complaint and the defendant's answer have been filed. FED. R. CIV. P. 12(c); *Moss v. Martin,* 473 F.3d 694, 698 (7th Cir. 2007). A Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Lodholtz v. York Risk Serv. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Lodholtz*, 778 F.3d at 639 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). In making this determination, the court must construe all facts in the pleadings and draw all reasonable inferences in favor of the non-moving party. *Lodholtz*, 778 F.3d at 639. Judgment on the pleadings should be granted if the "facts are uncontested" and reveal that relief for the plaintiff is no longer plausible. *See Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012).

### DISCUSSION

Congress enacted the TCPA in 1991 "to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *In the Matter of Dialing Servs., LLC*, 32 F.C.C.R. 6192, 6198, 2017 WL 3187648 (July 26, 2017). The TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A text message constitutes a "call" within the meaning of the TCPA. *Campbell-Edwald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

The TCPA directs the FCC to implement rules and regulations to effectuate the Act's provisions. *Mims v. Arrow Financial Servs., LLC*, 565 U.S. 368, 371 (2012). Congress amended the TCPA just two weeks after its enactment to include Section (b)(2)(C), which expressly authorizes the FCC to "exempt from its consent requirement calls to a number assigned to a cellular telephone service that are not charged to the consumer,

subject to conditions the Commission may prescribe 'as necessary in the interest of'

consumer privacy rights." *In the Matter of Rules & Regulations Implementing the Tel.*

*Consumer Prot. Act of 1991* (hereinafter "2015 Ruling"), 30 F.C.C.R. 7961, 8023, 2015 WL

4387780 (July 10, 2015) (quoting 47 U.S.C. § 227 (b)(2)(C)); *See* Pub. L. No. 102-556, 106

Stat. 4181, 4194-95 (Oct. 28, 1992).

Stated more simply, the TCPA prohibits sending certain automated text

messages unless (1) the message is in response to an emergency; (2) the message is sent

with the prior consent of the recipient; (3) or the FCC has exempted the message from

the consent requirements under Section (b)(2)(C).

The FCC issued its first TCPA ruling in 1992, in which it carved out exemptions

for certain types of calls and provided clarification on the TCPA's reach. *See In the*

*Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (hereinafter

"1992 Ruling"), 7 F.C.C.R. 8752, 1992 WL 690928 (Oct. 16, 1992). The following excerpt

from the 1992 Ruling forms the crux of the present dispute:

> The TCPA prohibits autodialer and prerecorded message calls to radio
> common carrier services or any service for which the called party is
> charged for the call. The Cellular Telecommunications Industry
> Association (CTIA) and Centel Corporation urge the Commission to
> exempt from the prohibitions on autodialers and prerecorded messages
> those calls made by cellular carriers to cellular subscribers (as part of the
> subscriber's service) for which the called party is not charged. These
> commenters point out that cellular customers are not charged for calls
> which, for example, monitor service or issue warnings to "roamers" that
> they are moving out of the carrier's service area. Therefore, such calls
> should either be exempted from the prohibitions of [the TCPA] or should
> be interpreted as not intended to be prohibited by Congress.
>
> In addition, West Marketing Services (West), a market research firm,
> states that it licenses a program, CelShare, which places calls to cellular

phones to measure a cellular carrier's share of a given cellular market. The CelShare program monitors cellular telephone company messages to determine whether a random sample of telephone numbers is active or inactive. To avoid actually reaching a cellular customer, calling devices are normally used in the middle of the night, are set to two rings, and immediately disconnect if a cellular customer answers the call. West states that three live connections are made for every 1,000 calls. Since the primary function of its program is market research, and since no telemarketing is involved, West urges the Commission to allow its program to operate under the proposed rules. West notes that several states have specifically exempted its program from the definition of prohibited autodialer calls.

Based on the plain language of § 227(b)(1)(iii), we conclude that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged. Moreover, neither TCPA nor the legislative history indicates that Congress intended to impede communications between radio common carriers and their customers regarding the delivery of customer services by barring calls to cellular subscribers for which the subscriber is not called. Accordingly, cellular carriers need not obtain additional consent from their cellular subscribers prior to initiating autodialer and artificial and prerecorded message calls for which the cellular subscriber is not charged. However, the market research calls to cellular carriers, as conducted by the West CelShare program, are clearly prohibited absent the prior express consent of the cellular customer called. While West appears to take pains to avoid calls which will result in charge to cellular subscribers, the fact that its market research calls result in such charges and are made without prior consent from the subscribers places its service under the prohibitions of the TCPA and the rues [sic].

*Id.* at 8775 (internal citations omitted).

The dispositive issue in this case is whether the 1992 Ruling completely immunizes cellular carriers from liability under the TCPA when they send their customers service-related messages for which the customer is not charged or whether liability hinges on the customer's consent.

SI contends that, based on the 1992 Ruling, messages from a cellular carrier to its

customer totally fall outside the scope of the TCPA and it can therefore send messages to its customers without the customers' prior consent. If customer consent is not required, then it follows that Campbell could not revoke her consent to receive unwanted text messages.

Campbell, on the other hand, points to the FCC's statement that "cellular carriers need not obtain additional consent from their cellular subscribers prior to initiating [communications] for which the cellular subscriber is not charged." 1992 Ruling at 8775. She argues that the word "additional" proves these calls are subject to the TCPA's prohibitions, but the FCC exempted them based on the customer's prior consent. Campbell theorizes that an individual consents to receiving automated messages from her cellular carrier by virtue of subscribing to the carrier's services and that this consent can be revoked. The FCC has confirmed that "[c]onsumers have the right to revoke their consent to receive robocalls and robotexts in any reasonable way at any time." FCC Press Release, FCC Strengthens Consumer Protections against Unwanted Calls and Texts, 2015 WL 3819270, at *1 (June 18, 2015). Alternatively, Campbell argues that if consent is inapplicable, SI is still subject to liability because Congress did not intend to preclude the messages from the TCPA's prohibitions.

The FCC has done little to expound on the liability of cellular carriers under the TCPA, and there is an overall dearth of discussion regarding the matter. Based on FCC rulings and regulations, however, it appears cellular carrier liability does not rise and fall with the subscriber's consent.

As indicated above, when the TCPA was first enacted, cellular carriers argued

that calls to their subscribers "should either be exempted from the prohibitions of [the TCPA] or should be interpreted as not intended to be prohibited by Congress." *Id.* at 8775. The FCC clearly chose the latter, stating, "[b]ased on the plain language of § 227(b)(1)(iii), we conclude that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged." *Id.* The FCC explained that its decision was based on "the fact that neither the TCPA nor its legislative history indicates that Congress intended to impede communications between common carriers and their customers regarding the delivery of customer service by barring calls to wireless consumers for which the consumer is not charged." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (hereinafter "2012 Ruling"), 27 F.C.C.R. 1830, 1834, 2012 WL 507959 (Feb. 15, 2012).

The FCC has continued to adhere to this decision in subsequent rulings. For example, in a 2012 Ruling, the FCC stated that "calls made by cellular carriers to their subscribers for which the subscribers were not charged do not fall within the prohibitions on autodialers or prerecorded messages[.]" 2012 Ruling at 17485. In a 2015 Ruling, the FCC stated that "the TCPA's restrictions do not cover calls from wireless carriers to their customers[.]" 2015 Ruling at 7968 n.13.

Based on the above, it is clear that the messages at issue here are not merely exempt from liability under the TCPA based on prior consent or otherwise.[3] Rather,

---

[3] When the FCC issued its 1992 Ruling, Section (b)(2)(C) was non-existent. The FCC was statutorily authorized to exempt certain calls to residential telephone lines but not to cell phones. *Matter of Cargo*

they fall completely outside the TCPA's scope.[4]

Campbell's entire argument hangs on the phrase "additional consent" from the 1992 Ruling. She argues the word "additional" proves the FCC exempted these calls from TCPA liability based on prior consent. Otherwise, "additional" would be superfluous.

"It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). The phrase "additional consent[,]" however, is found in an administrative ruling, not a statute. The FCC's own interpretation of its 1992 Ruling establishes that "additional" was, indeed, superfluous; hence it's explanation that the TCPA "does not cover" calls from a cellular carrier to its customers for which the customer is not charged, and that these calls "do not fall within" the TCPA. If a statute "does not cover" an action, or the action "does not fall within" the statute's scope, then that action cannot lead to liability under the statute. *See Francis v. United States*, 188 U.S. 375, 381 (1903) ("The statute does not cover the transaction, and, however reprehensible the acts of the plaintiffs in error may be thought to be, we cannot sustain a conviction on that ground."); *United States v.*

---

*Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 29 FCC Rcd. 3432, 3434, 2014 WL 1266071 (March 27, 2014). Thus, the FCC could not exempt the text messages at issue here based on anything but prior express consent or emergency circumstances.

[4] The FCC has acknowledged there is a distinction between calls that are exempt from liability under the TCPA and calls that do not fall within the TCPA's scope. For instance, it explained, "[t]he TCPA did not carve out a specific exemption for voice messaging services. However, the services referred to by the commenters would appear to fall either outside the TCPA's prohibitions or under an exemption." 1992 Ruling at 8776.

*Bell*, 936 F.2d 337, 342 (7th Cir. 1991) (Reversing a defendant's conviction because his activities "[did] not fall within" the criminal statute.).

Finally, Campbell asserts that even if a customer cannot revoke consent, the messages at issue here are "not of the type" the FCC intended to preclude from TCPA liability. (Doc. 24, p. 14). She cites a portion of the 2012 Ruling that states:

> The Commission [in its 1992 Ruling] provided two examples of the types of wireless calls it was addressing: (1) calls monitoring service (*e.g.*, customer satisfaction, service quality, or other matters relevant to the management of their operations); and (2) warnings to roamers that they were moving out of their carrier's service area.

2012 Ruling at 1834 n.26.

Campbell asserts the FCC intended cellular-carrier immunity to extend only to these two types of calls. But the FCC explicitly states that these are merely "examples" of calls the Act does not cover. Moreover, a call warning a customer of the suspension of her service undoubtedly "monitors service."

Text messages from a cellular carrier to its customer related to the impending suspension of an account, and for which the customer is not charged, clearly do not come within the TCPA's ambit. Thus, the text messages are not subject to the Act's consent requirements, and a customer cannot advance a TCPA claim under a revocation-of-consent argument. The relevant facts here are uncontested and cannot support a plausible claim for relief.

CONCLUSION

For the reasons set forth above, SI's Motion for Judgment on the Pleadings

(Doc. 19) is **GRANTED.** Campbell's claims against SI are **DISMISSED with prejudice**.

Does 1-25 have not yet been identified because the Court stayed discovery pending

disposition of this Motion. Accordingly, Campbell's claims against Does 1-25 are

**DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment

accordingly.

> **IT IS SO ORDERED.**

> DATED:  April 13, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**